UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 23-293 (WMW/ECW)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | MOTION TO DISMISS THE |
| | ) | INDICTMENT |
| v. | ) | |
| | ) | |
| MOESHEA ISIAH HART, | ) | |
| | ) | |
| Defendant. | ) | |

Pursuant to Rule 12 of the Federal Rules of Criminal Procedure, Moeshea Hart, through counsel, respectfully moves the Court for an order dismissing the pending indictment against him, which charges one count of unlawful possession of a machinegun in violation of 18 U.S.C. §§ 922(o)(1) and 924(a)(2). *See* ECF No. 16. Mr. Hart maintains that, as a matter of law, this charge violates the Second Amendment of the U.S. Constitution both facially and as applied to Mr. Hart in light of the Supreme Court's recent watershed case of *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), which upended decades of circuit-court precedent interpreting the Second Amendment.

Mr. Hart acknowledges that this argument may be foreclosed by current Eighth Circuit precedent, where the court of appeals held that the "possession" of machineguns "is not protected by the Second Amendment." *United States v. Fincher*, 538 F.3d 868, 874 (8th Cir. 2008). Nevertheless, he files this Motion to preserve the issue for further review in light of the Supreme Court's intervening decision in *Bruen*.

## I.      The Second Amendment and Its Legal Standards After *Bruen*

The Second Amendment mandates: a "well regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed." U.S. CONST. amend. II.   The Supreme Court held in *District of Columbia v. Heller*, 554 U.S. 570, 628 (2008), that the Second Amendment codified an individual right to possess and carry weapons, explaining that the inherent right of self-defense is paramount.   *See also McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010) (holding "that individual self-defense is the central component of the Second Amendment right").

The Supreme Court recently clarified a two-part standard for courts to apply when deciding whether a government firearms regulation violates the Second Amendment.   *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).   First, a court must begin by deciding whether the "Second Amendment's plain text covers [the] individual's conduct" that the government seeks to regulate.   *Id.* at 2126.   Specifically, the Second Amendment right to "bear arms" refers to the right to "wear, bear, or carry upon the person or in the clothing or in a pocket, for the purpose of being armed and ready for offensive or defensive action in a case of conflict with another person."   *Id.* at 2134 (cleaned up).   If the conduct at issue is covered by the Second Amendment's plain text, that conduct is presumptively protected by the Second Amendment.   *Id.*

Second, to justify any regulation of protected conduct, "the government may not simply posit that the regulation promotes an important interest."   *Id.*   Instead, the government has the burden to prove its regulation "is consistent with this Nation's

2

historical tradition of firearm regulation." *Id.* Put another way, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127. This historical analysis focuses on tradition at the time of the founding and the ratification of the Second Amendment. *Id.* at 2136–37. "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* at 2126.

Below, Mr. Hart explains how *Bruen*'s two-part test supports dismissal of the indictment.

## II.     Section 922(o)(1) violates the Second Amendment.

The government charges Mr. Hart with a violation of 18 U.S.C. § 922(o)(1). ECF No. 16. Section 922(o), which bans machine gun possession, violates the Second Amendment both facially and as applied after *Bruen*, because it criminalizes possession of firearms "in common use" for the purpose of self-defense, and the statute is inconsistent with the Nation's historical tradition of firearms restrictions. *But see Fincher*, 358 F.3d at 874 ("Machine guns are not in common use by law-abiding citizens for lawful purposes and therefore fall within the category of dangerous and unusual weapons that the government can prohibit for individual use.").

### A.     The Second Amendment's plain text covers § 922(o) conduct.

Section 922(o) provides, in relevant part, that "it shall be unlawful for any person to transfer or possess a machine gun." A machine gun is "any weapon which shoots, is

3

designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b). Clearly, possession of a firearm is protected conduct, but under *Bruen*, the Court must determine whether a machine gun is somehow exempted from the "unqualified command" of the Second Amendment's plain text. *See Bruen*, 142 S. Ct. at 2126.

One wrinkle to this analysis is to decide which step of the *Bruen* framework properly addresses whether a *specific type* of firearm can be restricted by the government. The *Heller* Court strongly suggested that, in most cases, this is properly a question of the government's power to restrict a right—à la *Bruen* step two—rather than whether the particular type of firearm is among the "arms" protected by the Second Amendment's plain text at *Bruen* step one. The *Heller* Court explained: "the Second Amendment extends, prima facie, to *all instruments that constitute bearable arms*, even those that were not in existence at the time of the founding." *Heller*, 554 U.S. at 582 (emphasis added) (cleaned up). At the same time, the *Heller* Court identified a "*historical tradition* of prohibiting the carrying of 'dangerous and unusual' weapons." *Id.* at 627 (emphasis added). The *Heller* Court's reference to the "historical tradition" of prohibiting these types of firearms indicates that the question of firearm type is more properly addressed in the second step of *Bruen*: the historical-tradition analysis. That is, because *all firearms* are included among the "arms" protected by the Second Amendment, the question of the type of firearms that can be restricted is a question of the historical power to restrict them. *See id.* at 582. In short, because possession of a machinegun is undoubtedly covered by the plain text of the

Second Amendment, the Court must proceed to the second step of *Bruen*'s analysis.   *See Bruen*, 142 S. Ct. at 2134 (explaining the Second Amendment right to "bear arms" refers to the right to "wear, bear, or carry upon the person or in the clothing or in a pocket, for the purpose of being armed and ready for offensive or defensive action in a case of conflict with another person").

Even if this Court were to consider whether machineguns are among the "arms" protected by the Second Amendment's plain text at *Bruen* step one, the *Heller* Court clarified that the term "arms" does not apply "only [to] those arms in existence in the 18th century." *Heller*, 554 U.S. at 582.   "Just as the First Amendment protects modern forms of communications, and the Fourth Amendment applies to modern forms of search, the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id.* (cleaned up). "Thus, even though the Second Amendment's definition of 'arms' is fixed according to its historical understanding, that general definition covers modern instruments that facilitate armed self-defense." *Bruen*, 142 S. Ct. at 2132.   In other words, the Second Amendment "protects the possession and use of weapons that are 'in common use at the time.'" *Id.* at 2128 (citing *Heller*, 554 U.S. at 627).   Courts applying *Bruen* in similar contexts have similarly concluded. *See, e.g.*, *Rigby v. Jennings*, 630 F. Supp. 3d 603, 614 n.13 (D. Del. 2022) (in the context of a ban on untraceable and other firearms, explaining "[i]f a plaintiff challenges the government's prohibition, it is on the government first to prove the banned arm is dangerous and unusual, and if not that it is not commonly possessed, or not

commonly possessed by law-abiding citizens, or not commonly possessed for lawful purposes or militia readiness").

While the Supreme Court has previously recognized a "historical tradition of prohibiting the carrying of 'dangerous and unusual' weapons," *Heller*, 554 U.S. at 627, machineguns do not meet the definition of a "dangerous and unusual" weapon, as the Supreme Court has interpreted that phrase. Mr. Hart acknowledges that this runs counter to existing Eighth Circuit caselaw, which holds that machineguns "fall within the category of dangerous and unusual weapons that the government can prohibit for individual use." *Fincher*, 538 F.3d at 874. However, to preserve this issue for further review, Mr. Hart offers the following argument for why this Eighth Circuit caselaw contradicts Supreme Court caselaw. *See, e.g.*, *Heller*, 554 U.S. at 582 ("The Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding."). Mr. Hart expressly acknowledges that this Court is bound to apply binding precedent from the Eighth Circuit.

To begin, the question of whether a weapon is "dangerous and unusual" is conjunctive—that is, it must be *both* dangerous *and* unusual. *See, e.g.*, *Caetano v. Massachusetts*, 577 U.S. 411, 417 (2016) (Alito, J., concurring). Machineguns are not "unusual"—instead, they are unquestionably in common use today for the purposes of self-defense. As of May 2021, there were more than 740,000 machineguns *lawfully* possessed in the United States and registered with the Bureau of Alcohol, Tobacco, Firearms and

Explosives.[1] This is almost quadruple the number of lawfully possessed stun guns that Justice Alito found sufficient to characterize that weapon as "widely owned and accepted as a legitimate means of self-defense." *Caetano*, 577 U.S. at 420 (Alito, J., concurring).[2] Importantly, this figure includes only lawfully owned firearms that were grandfathered in from before § 922(o)'s passage in 1986. *See* 18 U.S.C. § 922(o)(2)(B); Pub. L. No. 99-308, sec. 102 (May 19, 1986). The actual number of machineguns currently owned by Americans is undoubtedly significantly higher. Even unlawfully owned machine guns count for the purposes of assessing whether the weapon is in "common use." *Cf. Friedman v. City of Highland Park*, 784 F.3d 406, 409 (7th Cir. 2015) (explaining "it would be absurd to say that the reason why a particular weapon can be banned is that there is a statute banning it, so that it isn't commonly owned.").

Moreover, while machineguns, like all firearms and other weapons, are assuredly dangerous under the ordinary use of that term, they are not "dangerous" as that term is used in the phrase "dangerous and unusual." As Justice Alito explained, "the relative dangerousness of a weapon is irrelevant when the weapon belongs to a class of arms commonly used for lawful purposes." *Caetano*, 577 U.S. at 418 (Alito, J., concurring).

---

[1] U.S. Dep't of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, Firearms Commerce in the United States: Annual Statistical Update 2021, 15–16 (2021).

[2] *See also Maloney v. Singas*, 351 F. Supp. 3d 222, 237–38 (E.D.N.Y. 2018) (finding evidence that at least 64,890 nunchaku were sold on the retail market in the United States between 1995 and 2018 sufficient to show the weapon was "in common use"); *Avitabile v. Beach*, 368 F. Supp. 3d 404, 411–12 (N.D.N.Y. 2019) (finding evidence that at least 300,000 tasers were owned by private citizens in the United States sufficient to show the weapon was "in common use").

Indeed, the "arms" identified by *Heller* as constitutionally protected include "*anything* that a man wears for his defence, or takes into his hands, or useth in wrath to case at or strike another"—virtually every weapon covered by that definition would qualify as "dangerous." *See id.* (citing *Heller*, 554 U.S. at 581) (emphasis added). "If *Heller* tells us anything, it is that firearms cannot be categorically prohibited just because they are dangerous." *Id.*

Moreover, the *Heller* Court identified a "tradition of prohibiting the *carrying* of 'dangerous and unusual weapons.'" *Heller*, 554 U.S. at 627 (emphasis added). The *Bruen* Court similarly explained that this historical class of statutes did not ban "the carrying of any class of firearms, they merely codified the existing common-law offense of bearing arms to terrorize the people." *Bruen*, 142 S. Ct. at 2143. But § 922(o) prohibits simple *possession* of a machine gun. Even if the Court were to somehow take *Heller* as excluding the carrying of dangerous and unusual weapons from the Second Amendment's plain text, § 922(o) intrudes upon a greater level of liberty by criminalizing the simple *possession* of these firearms. Consequently, because the plain text of the Second Amendment covers the conduct criminalized by § 922(o), the law is presumptively unconstitutional. *See Bruen*, 142 S. Ct. at 2126.

**B.    The government cannot meet its burden to show that § 922(o)'s restrictions are consistent with the Nation's historical tradition of firearm regulation.**

Under the *Bruen* framework, when the plain text of the Second Amendment covers the conduct at issue, the burden shifts to the government to "justify its regulation by

demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *See Bruen*, 142 S. Ct. at 2130.   In other words, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127.   The government must establish that § 922(o) is based on a historical "tradition"—that is, a robust record of specific, accepted, and enduring restrictions on the Second Amendment right.   *Id.* at 2156.

To meet its burden, the government must provide historical examples and support for the constitutionality of § 922(o), and the Court is "entitled to decide a case based on the historical record compiled by the parties," rather than conducting its own historical survey. *See id.* at 2130 n.6.   The government cannot rely on a select few "outlier" regulations, but instead must show "a tradition of broadly prohibiting" conduct in the manner of § 922(o). *See id.* at 2138, 2156.

The Supreme Court has explained that "when it comes to interpreting the Constitution, not all history is created equal.   Constitutional rights are enshrined with the scope they were understood to have when the people adopted them." *Id.* at 2136 (quoting *Heller*, 554 U.S. at 634–35).   "The Second Amendment was adopted in 1791 . . . . Historical evidence that long predates [this] date may not illuminate the scope of the right if linguistic or legal conventions change in the intervening years." *Id.*   Similarly, the Supreme Court explained that "we must also guard against giving post enactment history more weight than it can rightly bear." *Id.*   The Court expressed skepticism about reliance on laws passed long after the passage of the Second Amendment and explained "to the

extent later history contradicts what the text says, the text controls." *Id.* at 2137.

The Court also explained that the requisite similarity between the challenged law and historical examples in part depends on whether the problem addressed by the law has historically existed or is uniquely modern. *See id.* at 2131–33. When "a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Id.* at 2131. The total handgun ban in *Heller* and public-carry restriction in *Bruen* involved this type of straightforward historical inquiry. *Id.* The *Bruen* Court did not expressly define "distinctly similar," but the historical analysis therein illustrates that the term means that statutes are nearly identical or meaningfully the same, not simply analogous or "relevantly similar." *See, e.g.*, *id.* at 2153. On the other hand, "cases implicating unprecedented societal concerns or dramatic technological changes may require a more nuanced approach." *Id.* at 2132. "When confronting such present-day firearm regulations, this historical inquiry that courts must conduct will often involve reasoning by analogy." *Id.* Whether a historical regulation is a proper analogue for a uniquely modern regulation turns on whether they are "relevantly similar," based in part on how and why the regulations burden the Second Amendment right. *Id.* at 2132–33.

Here, the Court should require the government to meet its burden at *Bruen* step two by showing a founding-era tradition of imposing "distinctively similar" regulations nearly identical to § 922(o)'s blanket prohibition on the simple possession of machine guns. *See*

10

*id.* at 2131.   This is because the firearms criminalized by § 922(o) are not so dissimilar from the firearms at issue in *Heller* and *Bruen*, both of which involved "distinctly-similar" historical analyses.   *See id.*

Even if this Court were to instead apply the "relevantly-similar" historical standard, the Court must heed *Bruen*'s caution that courts should not unquestionably rely on historical restrictions on "dangerous and unusual weapons," which relate less to the *class* of firearms and more to the *use* of such arms to terrorize others.   *See id.* at 2143, 2145. As explained above, § 922(o) does not criminalize any particular use of machineguns beyond mere possession.   Moreover, as described above, machineguns are not sufficiently "unusual" such that any historical restriction would serve as a sufficient analogue. Therefore, the government cannot overcome its burden to prove that § 922(o) "is consistent with the Nation's historical tradition of firearm regulation."   *See id.* at 2130.   Mr. Hart moves for dismissal of the indictment under the Second Amendment.

## III.    Conclusion

For the reasons above, Mr. Hart respectfully moves this Court to dismiss the indictment.   *See* ECF No. 16; *but see Fincher*, 538 F.3d at 874 (holding, in a pre-*Bruen* decision, that possession of machineguns "is not protected by the Second Amendment").

Dated: November 8, 2023                   Respectfully submitted,

*s/ Matthew Deates*

_____

MATTHEW DEATES
Attorney ID No. 0400318
Attorney for Mr. Hart
Office of the Federal Defender
107 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415