UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Crim. No. 23-293 (JWB/ECW) |
| Plaintiff, | |
| v. | ORDER ACCEPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE |
| Moeshea Isiah Hart, *also known as Moeshea Hart*, | |
| Defendant. | |

Benjamin Bejar, Esq., United States Attorney's Office, counsel for Plaintiff.

Matthew Deates, Esq., Office of the Federal Defender, counsel for Defendant.

Defendant Moeshea Isiah Hart has filed objections to the January 3, 2024 Report and Recommendation ("R&R") issued by United States Magistrate Judge Elizabeth Cowan Wright. (Doc. Nos. 38, 39.) In the R&R, the Magistrate Judge recommends denying Defendant's Motion to Suppress Evidence (Doc. No. 30) and Motion to Dismiss the Indictment (Doc. No. 31). After review, and for the following reasons, Defendant's objections are overruled and the R&R is adopted.

BACKGROUND

The factual background of this case is more fully set forth in the R&R and is incorporated by reference. Only a brief summary is provided here.

Defendant Hart was indicted on September 20, 2023, for knowingly possessing a Glock pistol equipped with an attached machinegun conversion decice known as a

"switch" or "auto sear," enabling it to be fired as a fully automatic weapon by a single pull of the trigger. (Doc. No. 16, Indictment.) Thereafter, on October 5, 2023, Special Agent Kylie Williamson obtained a search warrant to search the three cell phones found in Hart's possession when he was arrested. In the affidavit supporting the search warrant, Williamson described the incidents leading to Hart's arrest. (Gov't Ex. 1; *see also* Doc. No. 30-1 (unauthenticated copy of exhibit).) The information included the following:

- On February 15, 2023, a 911 caller reported hearing automatic gunfire in a residential neighborhood, that they saw a black Jeep chasing a white Jeep, and that they saw the occupants of the black Jeep shooting at the white Jeep.

- Within a few blocks of the sighting, officers observed a black Jeep with a rear window that appeared to have been shot out.

- As the officers made a U-turn, the Jeep fled at a high rate of speed.

- The Jeep ultimately ran a red light, crashed into another motorist, and careened through the corner of a restaurant, where it eventually came to rest.

- Video evidence and other testimony indicated that Hart had been the driver of the Jeep.

- Officers found a Glock model 45, 9mm pistol, bearing serial number BSNC265 loaded with a round in the chamber and with fourteen live rounds inserted in the thirty-one-round magazine, on the restaurant floor near the driver's side door of the Jeep.

- A machinegun conversion device known as a "switch" was affixed to the rear plate of the pistol.

- Eleven 9mm discharged cartridge casings were found primarily in an around the driver's area of the Jeep.

- Hart was arrested. Incident to his arrest, officers seized the key fob for the Jeep and three cell phones from Hart's pants pockets.

- Officers learned that the Jeep had been reported stolen.

- DNA analysis determined that Hart could not be excluded from having contributed to the DNA profiles found on four areas of the firearm.

- Officers learned that the Glock pistol recovered was also correlated to a shots-fired incident in Minneapolis one year earlier, on February 15, 2022, where no suspects or victims had been identified.

- On March 7, 2023, officers with the St. Paul Police Department obtained a state search warrant for the cell phones found on Hart, but no electronic data or digital report from any of the cell phones was reviewed by the government until after the federal search warrant was obtained.

(Gov't Ex. 1.)

Special Agent Williamson also made several statements in the affidavit based on her training and experience:

- "[I]t is common for individuals who unlawfully possess firearms, ammunition, and/or machinegun conversion devices, to communicate with others about the acquisition, possession, use, and/or sale or trade of those firearms and firearms-related accessories and to maintain evidence of those firearms, firearms-related accessories, and/or firearms-related crimes in their residences, vehicles, and electronic devices, such as the Cell Phones." (Gov't Ex. 1 at ¶ 25.)

- She "has obtained information from social media platforms . . . and from cellular telephones, that aided in investigations of the criminal possession and use of firearms and the unlawful possession of machinegun conversion devices." (*Id.* at ¶ 26.)

- "[A] physical cell phone possessed by an unlawful possessor or user of a firearm often will contain additional photographs, videos, text and SMS messages, and other correspondence that were not posted to social media and that also relate to or evidence criminal possession and use of firearms and/or the unlawful possession of machinegun conversion devices." (*Id.* at ¶ 27.)

- "Individuals who possess, use, sell, trade, or broker firearms, often keep evidence of their firearms-related crimes on their cellular phones." (*Id.* at ¶ 28.)

- "Groups of people often use their cell phones to photograph and/or video themselves together during gatherings, to show associations with each other, with

3

- their group, and with their 'assets.' Those assets commonly include firearms . . . to promote their status and to possibly intimidate others." (*Id.*)

- "I have often found evidence in the form of photos, videos, and/or written correspondence electronically stored on cellular phones of individuals who violate firearms law." (*Id.* at ¶ 29.)

The affidavit requested authorization to forensically examine the three cell phones that Hart had in his possession when he was apprehended, and to permit the extraction of electronically stored data, including social media posts, photographs, videos, or other depictions, texts or other electronic communications, and internet web-browsing or search history, relating to firearms, ammunition, firearms accessories, and machinegun conversion devices. It also requested permission to extract call logs, records, and histories from March 13, 2021, through February 15, 2023. (*Id.* at Attachment B.)

Hart is charged with one count of possession of a machinegun in violation of 18 U.S.C. §§ 922(o)(1) and 924(a)(2). (Doc. No. 16, Indictment.) He moves to suppress the evidence seized during the execution of the October 5, 2023 federal warrant, arguing the underlying warrant lacked probable cause. Hart also seeks to dismiss the Indictment on the basis that the charging statute, 18 U.S.C. § 922(o), is unconstitutional as applied to him in violation of the Second Amendment. The R&R recommends denying both motions.

## DISCUSSION

I.   **Standard of Review**

District courts review the portions of a magistrate judge's R&R to which a party objects *de novo*. 28 U.S.C. § 636(b)(1); D. Minn. LR 72.2(b)(3). A district judge may accept, reject, or modify all or part of the findings or recommendations. *See id.*

II.  **Motion to Dismiss the Indictment**

Hart asserts that the government's decision to charge him with possessing a machinegun under 18 U.S.C. §§ 922(o)(1) and 924(a)(2) violates the Second Amendment in light of the Supreme Court's decision in *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). He objects to the R&R's conclusion finding otherwise.

The undersigned disagrees with Hart. In *Bruen*, the Supreme Court did not overrule its prior holding in *District of Columbia v. Heller*, 554 U.S. 570, 627–29 (2008), which upheld a government firearms regulation as part of "the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'"*See* 597 U.S. at 20–21. In fact, as the Magistrate Judge correctly pointed out, *Bruen* relied on *Heller* to explain that "the Second Amendment protects only the carrying of weapons that are those 'in common use at the time,' as opposed to those that 'are highly unusual in society at large.'" *See id.* at 47 (quoting *Heller*, 554 U.S. at 627). The Supreme Court has not specifically found that machineguns qualify as "dangerous and unusual weapons." The Eighth Circuit, however, has. *See United States v. Fincher*, 538 F.3d 868, 874 (8th Cir. 2008) (finding that possession of machineguns is not protected by the Second Amendment). As binding precedent, *Fincher* must be followed. *See United States v.*

5

*Kelley*, Crim. No. 23-267 (DWF/DJF), 2024 WL 264588, at *1 (D. Minn. Jan. 24, 2024) (rejecting post-*Bruen* facial challenge of § 922(o) because *Fincher*'s holding is consistent with both *Heller* and *Bruen*). Therefore, Hart's objection is overruled.

**III.  Motion to Supress**

Hart also challenges the Magistrate Judge's finding that the search warrant affidavit at issue contained probable cause. Probable cause exists if "given all the circumstances set forth in the affidavit before [the issuing magistrate] . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "When a magistrate relies solely on an affidavit to issue the warrant, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Farlee*, 757 F.3d 810, 819 (8th Cir. 2014) (quotations omitted). When determining whether probable cause exists to issue a search warrant, judges are allowed to draw reasonable inferences from the totality of the circumstances. *United States v. Alexander*, 574 F.3d 484, 490 (8th Cir. 2009) (quotiation omitted). A reviewing court should give "great deference" to a magistrate judge's probable cause determination, and simply ensure the issuing judge "had a substantial basis for concluding that probable cause existed." *Gates*, 462 U.S. at 236, 238–39 (quotations omitted).

Hart first objects that because the warrant application contained no particularizsed allegations as to Hart's cell phone activity or allegations showing that evidence of the charged offense (possession of a machinegun) would be found on the phones, probable cause was lacking.

Based on the totality of the information provided in the search warrant affidavit, there was a fair probability that evidence of the crime would be found on cell phones that were possessed by Hart at the time of his arrest. The affidavit described specific evidence indicating that Hart had possessed the machinegun immediately before the Jeep crashed into the restaurant and that the cell phones sought to be searched were on Hart's person when he was arrested after he exited the vehicle. The affidavit then stated that, in the officer's training and experience, an inference was appropriate that evidence of Hart's machinegun possession would be found on the cell phones he was carrying. That information was sufficient to establish probable cause to search the cell phones. *See United States v. Ivey*, No. 23-1706, 2024 WL 296383, at *1 (8th Cir. Jan. 26, 2024) (finding that an affidavit which, was in part based on the affiant's training and experience, adequately established probable cause that a cell phone would contain evidence of a firearms offense); *United States v. Ross*, 487 F.3d 1120, 1123 (8th Cir. 2007) (holding there was probable cause to believe drug trafficking evidence would be found at the alleged trafficker's residence where officers stated that "in their experience such an inference is appropriate" and the supporting affidavit also described the defendant's drug trafficking activity); *see also United States v. Jackson*, Crim. No. 18-211 (JNE/ECW), 2019 WL 13127190, at *9 (D. Minn. Jan. 4, 2019), *R&R adopted*, 2019 WL 13127184 (D. Minn. Feb. 26, 2019) (finding requisite nexus between the crime (gun possession) and the cell phone). As a result, Hart's objection is overruled.

Second, Hart objects that the warrant was overbroad in scope because it authorized a search dating back to March 13, 2021. However, it is evident from the warrant

application that the firearm at issue was purchased on that date, was linked to a shots-fired incident on February 15, 2022, and that evidence indicated that sometime between the date of purchase and the date of the incident, the firearm landed in Hart's hands. The affidavit therefore states enough to make this timeframe relevant and, in light of all the circumstances explained by the officer, establish a fair probability that evidence about this firearm and Hart's possession of it would be found on the cell phones dating back to when it first changed hands from the original owner. Hart's overbreadth objection is overruled.

Third, Hart objects to the R&R's determination that the good-faith exception applies even if the affidavit lacked probable cause. Under the good-faith exception, if evidence is seized pursuant to a search warrant that lacked probable cause, that evidence is still admissible if the executing officer's good-faith reliance on the warrant was objectively reasonable. *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008) (citing *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007)). There are four circumstances under which the good-faith exception will not apply:

> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge "wholly abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) when the warrant is "so facially deficient" that no police could reasonably presume the warrant to be valid.

*Proell*, 485 F.3d at 431 (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984). When considering the good-faith exception, a court evaluates "whether a reasonably well

trained officer would have known that the search was illegal" and must look at "the totality of the circumstances." *Id.* at 430–31.

Hart argues that the officer's reliance on the warrant was objectively unreasonable because of the lack of probable cause. As already explained, the warrant affidavit provided sufficient probable cause for the search. Therefore, the affidavit was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" and the warrant was not "so facially deficient" that no police officer could reasonably presume it was valid, as Hart suggests. Hart points to no facts, circumstances, or evidence that the officer's reliance on the warrant was not in good faith. And, as the Magistrate Judge found, there is no evidence the officer's reliance was unreasonable. The good-faith exception applies. Therefore, Hart's objection is overruled.

## CONCLUSION

Based on a full review, and in consideration of the applicable law, the undersigned agrees with the R&R's conclusion that the cell phone warrant is supported by probable cause, and that even if probable cause did not exist the good-faith exception applies. In addition, the government's decision to charge Hart with possessing a machinegun under 18 U.S.C. §§ 922(o)(1) and 924(a)(2) did not violate the Second Amendment, considering the current state of the caselaw. Therefore, the R&R is accepted in its entirety.

## ORDER

**IT IS HEREBY ORDERED** that:

1. Defendant's Objections to Report and Recommendation (Doc. No. 39) are

**OVERRULED**;

2. The Report and Recommendation (Doc. No. 38) is **ACCEPTED**;

3. Defendant's Motion to Suppress Evidence of an Unlawful Search (Doc. No. 30) is **DENIED**; and

4. Defendant's Motion to Dismiss the Indictment (Doc. No. 31) is **DENIED**.

Date: March 1, 2024                                  *s/ Jerry W. Blackwell*
                                                      JERRY W. BLACKWELL
                                                      United States District Judge